**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CASE NO:** 3:17-CV-246-CRS

*ELECTRONICALLY FILED*

**HAROLD WAYNE BARNES, JR.,**                                                    **PLAINTIFF**
**Harrison County, KY**

**VS.**

**CSX TRANSPORTATION, INC.**
**500 Water Street, J160**
**Jacksonville, FLA 32202**
**SERVE:**
    **CORPORATE CREATIONS NETWORK, INC.**
    **101 North Seventh Street**
    **Louisville, KY 40202**                                                                **DEFENDANT**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.  Plaintiff Harold W. Barnes, Jr., applied for reinstatement in the position of Yardmaster with Defendant CSX Transportation Inc., in the summer of 2012 and had previously worked in the same position for Defendant in the late 1990's until around 2004. When Defendant denied Plaintiff the Yardmaster position, a position he had previously performed, due to his diagnosis of hereditary optic atrophy and/or color vision impairment he filed a Charge of Discrimination and a lawsuit, asserting violation of his rights under the Americans with Disabilities Act (ADA) and the Kentucky Civil Rights Act (KCRA). That lawsuit was filed on May 24, 2013. (*Harold Wayne Barnes v. CSX Transportation Inc.,* Case No. 13-cv-00525-DJH-DW). After efforts to settle those claims failed, Plaintiff filed multiple applications for various positions with Defendant but has received not so much as a telephone interview for any position,

1

despite his qualifications for such positions. It is Plaintiff's contention in this action that he has been denied interviews and ultimately denied job positions with Defendant, despite being better qualified than the individuals ultimately hired in such positions, in retaliation for his decision to pursue the litigation referenced above, or alternatively because of his disability, real or as perceived by Defendant, in violation of his right not to be subject to such retaliation discrimination as protected by the ADA, 42 U.S.C. §12111 *et seq.* and the Kentucky Civil Rights Act, KRS §§344.040 and 344.280*et seq.* Plaintiff has properly exhausted his administrative remedies for purposes of his ADA claims.

## JURISDICTION AND VENUE

2. Plaintiff filed his charge of discrimination against Defendant with the EEOC on or about January 19, 2016, asserting his claims of retaliation and disability discrimination. He received his Right to Sue Notice after January 20, 2017, the date of mailing. He brings this action pursuant to the Americans with Disabilities Act, 42 U.S.C. §§12111 *et seq.* and 12117(a), and the Kentucky Civil Rights Act, KRS §344.450. This Court has jurisdiction over this action under 28 U.S.C. §§1331 and 1343(a) (3) and (4), and 42 U.S.C. §12117(a). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367. Venue in this District is proper under 28 U.S.C. §1391 in that much of Defendant's conduct about which Plaintiff complains effectively denied him employment positions at Defendant's operations in this district, Defendant regularly conducts business in this district and the injuries suffered by Plaintiff occurred in this district.

## PARTIES

3. Plaintiff Harold W. Barnes Jr. is and was at all relevant times a resident of Harrison County, Kentucky, has been employed by Defendant CSX Transportation, Inc., at its

location in Louisville, Jefferson County, Kentucky, and has been receiving disability since 2006. More recently, Plaintiff applied to return to his former position with Defendant as a Yardmaster in its Louisville location. Plaintiff subsequently filed a lawsuit in this district contending that Defendant's refusal to reinstate him to the position of Yardmaster violated his rights under the ADA and the KCRA.

4. Defendant CSX Transportation, Inc., (hereinafter "CSX") is incorporated under the laws of a sister state with its principal place of business located in Jacksonville, Florida. Defendant is licensed to, and regularly conducts business in the Commonwealth of Kentucky, including Jefferson County, Kentucky. At all times relevant hereto, Defendant employed more than 1000 employees in commerce for at least 1250 hours for each employee for the 12 months preceding the filing of the Charge of Discrimination. Thus, at all relevant times, Defendant was an employer for all purposes within the meaning of the Americans with Disabilities Act, 42 U.S.C. §12111 *et seq.,* and KRS §344.450.

## FACTS

5. Plaintiff Harold Barnes, Jr. is a resident of Harrison County, Kentucky. He was employed by Defendant, CSX, beginning in 1997.

6. When Plaintiff was first hired by Defendant he had been diagnosed with hereditary dominant optic atrophy. Plaintiff's current diagnosis is hereditary dominant optic atrophy with legal blindness. Without visual aids, this impairment prevents Plaintiff from engaging in normal daily activities such as driving, cooking and reading.

7. Plaintiff was employed as a Yardmaster or Assistant Terminal Train Master at Louisville's Osborn Yard from 1997 until 2004. Thereafter, he was employed in a position of

Manager of Field Investigations. In May 2006, Plaintiff was involved in a job-related injury and was placed on long-term disability with Defendant CSX.

8. In or around June 2012, after receiving assistance from the Kentucky Office for the Blind that would help him perform the essential functions of the position of Yardmaster, Plaintiff applied for a return to the Yardmaster position at the Louisville Osborn Yard, the same position he held for years between 1997 and 2004.

9. Shortly after applying for a return to the position of Yardmaster, Plaintiff submitted medical documentation to Defendant. The documentation submitted to Defendant confirmed that Plaintiff, with visual aids, was able to perform all the essential functions of the position of Yardmaster, including the ability to differentiate colors and read and interpret computer data. Despite his ability and qualifications to perform the essential functions of the Yardmaster position, with reasonable accommodations, Defendant denied him reinstatement to that position.

10. Plaintiff thereafter filed a charge of disability discrimination with the EEOC and received a right to sue notice. Thereafter, on May 24, 2013, Plaintiff filed a lawsuit against Defendant alleging that its refusal to return Plaintiff to the position of Yardmaster was based on his disability and Defendant's refusal to allow him reasonable accommodations, including use of various visual aids, provided largely through the Kentucky Office for the Blind, which, if permitted, would have allowed Plaintiff to perform the essential functions of the position of Yardmaster. That lawsuit is entitled *Harold Wayne Barnes v. CSX Transportation Inc.,* Case No. 13-cv-00525-DJH-DW and is still pending.

11. Subsequent to filing that lawsuit, Plaintiff and Defendant engaged in efforts to settle the claims. When those efforts eventually failed, and in an effort to find other employment

and mitigate his damages, Plaintiff applied for more than 80 positions in various states with CSX, which he believed, with reasonable accommodations, he was qualified to perform. Those applications were submitted to Defendant between approximately August of 2015 and March of 2017.

12. Plaintiff received rejections from Defendant for each of the applications referenced in the preceding paragraph. Every one of those rejections occurred without affording Plaintiff a single interview of any kind.

13. Before applying for those positions, Plaintiff held the following positions with Defendant between 1997 and 2006:

    a. Freight Conductor-Louisville, Kentucky (probationary). In that position it was Plaintiff's responsibility to safely coordinate train crews on a freight train, place rail cars to facilitate loading and unloading, and makeup/breakdown trains in a rail yard, customer facility or similar locations. His primary duties included, *inter alia*: ensure compliance with all train orders, signals, railroad and safety rules and Federal Railroad Administration (FRA) regulations; inspect all equipment on cars prior to departures; receive and transmit information by radio and telephone; read and understand bulletins, work orders, and switch lists; assist with the coupling and uncoupling of cars, operate switches, and make minor repairs to railcars, including replacing heavy couplings or air brake hoses; work with customers to ensure accurate movement and placement of cars; deliver excellent customer service by identifying customer needs and meeting or exceeding expectations; maintain awareness of surrounding area and suspicious activity to ensure rail safety; quickly and repeatedly make precise adjustments in moving the controls of a machine or vehicle to exact positions; comprehend color and/or hand signals and systems; review instructions from dispatchers and other transportation employees, and discuss with locomotive engineers.

    b. Chief Yardmaster: In that position Plaintiff's duties included, *inter alia,* the following: ensure efficient handling of yard work and prompt movement of cars, making sure cars are placed, pulled, handled and forwarded in accordance with classification and way billing instructions; supervise the movement of inbound and outbound trains and yard crews for on-time movement of freight consistent with train schedules and operating within or below set budget. In addition, Plaintiff supervised the various positions of clerks, trainmen (both conductor and engineers), track departments that operated within the yard, the car men that worked within yard limits, as well as various other task. He also instructed clerks both in Louisville and Jacksonville regarding various job assignments they needed to complete.

   c. Assistant Trainmaster:  In that position, Plaintiff assisted in developing and implementing an aggressive safety action plan. He assisted in directly supervising Train and Engine (T&E) employees, Clerks, and Yardmasters. He was responsible for identifying areas for improvement of T&E employees.  He helped in conducting annual rules training and operating efficiency testing. He worked closely with Engineering, Mechanical, other Field and terminal management personnel, Crew Management, and Operations Center in the handling of crews and operations to make decisions relating to safety, service reliability, and cost goals.  He participated in investigations to determine cause to ensure future train accident prevention. In addition he attended customer meetings as required, developed customer relationships.  He was also required to understand any service related customer issues.

   d. Manager Field Investigations: In that position Plaintiff investigated all events that arose out of the operation of the railroad and other subsidiary entities on an assigned territory. He assessed financial exposure.  He developed event resolution plans and assisted in the litigation process.  He was expected to enhance the CSXT reputation by promoting a safety culture internally and externally.  He also assisted employees injured on the job in aligning with other departments to achieve organizational objectives, and assisted them in efforts to otherwise return to work.

  14. As noted, Plaintiff has applied for more than 80 positions with Defendant, after settlement efforts in the above referenced litigation failed.  Examples of such applications include the following:

   a. Between October of 2015 and December of 2016, Plaintiff submitted approximately ten (10) applications to Defendant for position of Operations Supervisor. Plaintiff met the posted qualifications for this position, including: a high school degree, approximately 9 years of experience with rail operations and transportation, and more than 10 years of experience with logistics.

   b. Between September of 2015 and October of 2016, Plaintiff submitted to Defendant approximately six (6) applications for the position of Customer Operations Representative.  Plaintiff met the posted qualifications for this position, including: a high school degree, approximately 9 years of experience with rail operations and transportation, and more than 10 years of experience with logistics. In addition, Plaintiff had approximately 9 years of customer service experience with CSX in the positions of Yardmaster and Trainmaster, and more than 10 years of experience in customer service with his prior experience in the new and used car sales field before joining CSX.  In addition, Plaintiff had substantial experience with and knowledge of: Mainframe/PC operating systems for data input, retrieval and report generation, relevant Federal DOT regulations and other knowledge and skills associated with the position;

   c. Between August of 2015 and June of 2016, Plaintiff submitted to Defendant approximately three (3) applications for the position of Customer Service

6

Coordinator. Plaintiff met the posted qualifications for this position, including: a high school degree; Plaintiff had approximately 9 years of customer service experience with CSX in the positions of Yardmaster and Trainmaster, and more than 10 years of experience in customer service with his prior experience in the new and used car sales field before joining CSX. Plaintiff also had substantial skills with Microsoft Office, customer interfacing and planning and organization, all within his prior experience at CSX. In addition, Plaintiff developed the following competencies relevant to this position: analyze issues and make effective decisions, advance the business, engage, coach, and build a diverse workforce, build partnerships, improve service quality and processes, execute effectively, demonstrate personal leadership, and demonstrate functional and technical agility.

      d.      In August of 2016, Plaintiff submitted two (2) applications for the position of Sr. System Administrator I. Plaintiff met the posted qualifications for this position, including: high school degree; 10 years experience with information systems including his experience at CSX as described above and in his positions in new and used car sales. In addition, Plaintiff had developed knowledge and skills in the following relevant areas: ability to assess and evaluate risk and use an analytical and systematic approach to problem solving: effective communication with both technical and non-technical audiences; absorb and understand relevance of new technical information to the business; demonstrate leadership within team and facilitate collaboration between stakeholders; and analyze requirements and offer options for continuous improvements.

      e.      In June of 2015, Plaintiff applied for the position of Talent Advisor. Plaintiff met the posted qualifications for this position, including: a high school degree and more than 5 years experience with recruiting positions for CSX and managing staffing. Plaintiff's skills included: knowledge of human resource related concepts, procedures and information systems; and knowledge of applicant tracking systems such as Taleo; knowledge of relevant labor and employment regulations and other skills relevant to that position.

      f.      In January of 2016, Plaintiff applied for the position of Administrative Assistant. Plaintiff met the posted qualifications for this position, including: high school degree and approximately 9 years of experience with CSX in administration and supervision of clerical personnel.

      g.      In June of 2016, Plaintiff applied for the position of Manager PTC Plaintiff met the posted qualifications for this position, including: high school degree; approximately 9 years of experience with distribution, repair or maintenance experience in mechanical locomotive and/or car, and in analytical processes. In addition Plaintiff had knowledge and skills in the following areas: Knowledge of System Maintenance Instruction (SMI) and System Maintenance Regulations (SMR's) pertaining to mechanical maintenance; Regulatory knowledge of Federal Railroad Administration (FRA) regulations and Association of American Railroad (AAR) standards; Advance understanding of root cause analysis; knowledge of financial concepts, discounted cash flow models and statistical analysis; analytical, quantitative and problem solving skills;

ability to understand, create, maintain and modify complex analytical models; ability to manage several projects simultaneously; and ability to independently participate in complex cross functional project teams with a proven track record.

15. Despite meeting the qualifications for the positions, and despite Plaintiff's substantial experience with CSX, Defendant rejected each of Plaintiff's applications without providing Plaintiff any opportunity to receive an interview of any kind.

16. Prior to filing this Complaint, Plaintiff's counsel sent Defendant's counsel notice of his intent to file this Complaint and stating Plaintiff's belief that the individuals who filled the positions listed above had lesser qualifications than Plaintiff. He invited CSX to supply documentation that would confirm that his belief was incorrect. Plaintiff's counsel has received no response to that request. Consequently, it is likely that the positions listed above for which Plaintiff applied, were filled by individuals who were not as qualified as Plaintiff to fill those positions.

17. Moreover, in light of the number of positions Plaintiff has applied for at CSX, Plaintiff's past experience with CSX and other past relevant experience, and in light of his other qualifications described above for the above described positions, the only plausible explanation for CSX's refusal to offer him a position for which he applied and he is qualified, and the only plausible explanation for Defendant's failure to even offer Plaintiff so much as a phone interview before rejecting his multiple applications, is that CSX is retaliating against Plaintiff for having filed the above referenced lawsuit against Defendant, and/or because of his disability, and/or because Defendant regarded Plaintiff as disabled and assumed he was unable to perform the essential functions the positions for which applied even with reasonable accommodations, assumptions that in Plaintiffs case were incorrect.

18. Defendant CSX's decisions not to consider Plaintiff for any of the positions for which he applied and its refusal to offer him any of the positions for which he applied were motivated by, and in retaliation for Plaintiff's filing of the above referenced litigation, and/or by Defendants' perception and assumption that Plaintiff is a disabled person and unable to perform any of the positions for which he applied, even with reasonable accommodations. In fact, Plaintiff is fully qualified to perform the essential functions of the above described positions for which he applied, with reasonable accommodations.

19. As a direct and proximate cause of the conduct of the Defendant as described above, Plaintiff has suffered damages, including past and future lost wages and benefits in an amount to be determined by the evidence at trial.

20. In addition, Defendant's conduct as described above has caused Plaintiff to suffer serious emotional distress associated with being wrongfully denied the above described positions of employment or even receiving reasonable consideration for such positions, including positions in which he had previously worked without incident. The emotional distress he has suffered will continue into the future, all to Plaintiff's damage in an amount to be determined by the evidence at trial.

21. Defendant's conduct occurred in willful, malicious, and wanton disregard of Plaintiff's rights under the Americans with Disabilities Act, entitling Plaintiff to the award of punitive damages in an amount to be determined by the evidence at trial.

## COUNT I
**(Discrimination - Americans with Disabilities Act - 42 U.S.C. §12111 *et seq.*)**

22. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

23. At all times relevant hereto, Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. §12111 *et seq.*, or was regarded as disabled by Defendant.

24. Plaintiff was subjected to discrimination by the Defendant CSX on the basis of disability when it denied Plaintiff the positions of employment described in paragraph 14 above despite Plaintiff's ability to perform the essential functions of the position with reasonable accommodation, as more fully described above. Defendant denied Plaintiff's applications for such positions because of his disability or because he was regarded as having a disability, as more fully described above.

25. Defendant's conduct as described above violated Plaintiff's rights as protected by 42 U.S.C. §12111 *et seq.,* giving rise to Plaintiff's claim under 42 U.S.C. §12117.

26. As a direct and proximate result of Defendant's willful discrimination against Plaintiff as described above, Plaintiff has suffered and will continue to suffer lost wages and benefits, loss of employment opportunities, and other past and future consequential damages, all in an amount to be demonstrated by the proof at trial. In addition, Plaintiff has suffered and will in the future continue to suffer serious emotional injury directly caused by Defendant's discriminatory conduct described above, all to his damage in an amount to be demonstrated by the proof at trial.

## COUNT II
**(Discrimination - Kentucky Civil Rights Act - KRS 344.040 *et seq.*)**

27. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

28. At all times relevant hereto, Plaintiff was a qualified individual with a disability within the meaning of the Kentucky Civil Rights Act, KRS 344.040 *et seq.*, or was regarded as such by Defendant.

29. Plaintiff was subjected to discrimination by the Defendant CSX on the basis of disability when it denied Plaintiff the positions of employment described in paragraph 14 above despite Plaintiff's ability to perform the essential functions of the position with reasonable accommodation, as more fully described above. Defendant denied Plaintiff's applications for such positions because of his disability or because he was regarded as having a disability, as more fully described above.

30. Defendant's conduct as described above violated Plaintiff's rights as protected by KRS 344.040, *et seq.,* giving rise to Plaintiff's claim under KRS 344.450.

31. As a direct and proximate result of Defendant's willful discrimination against Plaintiff as described above, Plaintiff has suffered and will continue to suffer, lost wages and benefits, loss of employment opportunities, and other past and future consequential damages, all in an amount to be demonstrated by the proof at trial. In addition, Plaintiff has suffered and will in the future continue to suffer serious emotional injury directly caused by Defendant's discriminatory conduct described above, all to his damage in an amount to be demonstrated by the proof at trial.

## COUNT III
**(Retaliation - Americans with Disabilities Act - 42 U.S.C. §12203 *et seq.*)**

32. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

33. At all times relevant hereto, Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. §12111 *et seq.*, or was regarded as such by Defendant. At all times relevant hereto, Plaintiff opposed acts of disability discrimination by Defendant by filing a lawsuit against Defendant as described above and, thus, was engaging in protected activity as defined in 42 U.S.C. §12203.

34. Plaintiff was subjected to retaliation by the Defendant CSX as a direct result of Plaintiff pursing the above referenced disability discrimination lawsuit against Defendant. Specifically, Plaintiff was denied the opportunity to interview for any of the positions for which he applied as described above, despite his qualifications for such positions, and was ultimately denied the positions of employment described in paragraph 14 above despite Plaintiff's ability to perform the essential functions of the positions with reasonable accommodation, and despite the fact he was better qualified for those positions than the individuals who were ultimately offered said positions. Plaintiff was ultimately denied consideration for those positions and denied those positions of employment as a direct result of having filed the lawsuit against Defendant as described above.

35. Defendant's conduct as described above violated Plaintiff's rights as protected by 42 U.S.C. §§12203 *et seq.,* giving rise to Plaintiff's claim under 42 U.S.C. §12117.

36. As a direct and proximate result of Defendant's willful retaliation against Plaintiff as described above, Plaintiff has suffered and will continue to suffer lost wages and benefits, loss of employment opportunities, and other past and future consequential damages, all in an amount to be demonstrated by the proof at trial. In addition, Plaintiff has suffered and will in the future continue to suffer serious emotional injury directly caused by Defendant's discriminatory and retaliatory conduct described above, all to his damage in an amount to be demonstrated by the proof at trial.

## COUNT IV
**(Retaliation – Kentucky Civil Rights Act –KRS §§344.040 and 344.280 *et seq.*)**

37. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

38. At all times relevant hereto, Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, KRS §344.040 *et seq.*, or was

regarded as such by Defendant. At all times relevant hereto, Plaintiff opposed acts of disability discrimination by Defendant by filing a lawsuit against Defendant as described above and, thus, was engaging in protected activity as defined in KRS §§344.040 and 344.280.

39. Plaintiff was subjected to retaliation by the Defendant CSX as a direct result of Plaintiff pursing the above referenced disability discrimination lawsuit against Defendant. Specifically, Plaintiff was denied the opportunity to interview for any of the positions for which he applied as described above, despite his qualifications for such positions, and was ultimately denied the positions of employment described in paragraph 14 above despite Plaintiff's ability to perform the essential functions of the position with reasonable accommodation, and despite the fact he was better qualified for those positions than individuals who were ultimately offered said positions. Plaintiff was ultimately denied consideration for those positions and denied those positions of employment as a direct result of having filed the lawsuit against Defendant as described above.

40. Defendant's conduct as described above violated Plaintiff's rights as protected by KRS §§344.040 and 344.280 *et seq.,* giving rise to Plaintiff's claim under KRS §344.450.

41. As a direct and proximate result of Defendant's willful retaliation against Plaintiff as described above, Plaintiff has suffered and will continue to suffer lost wages and benefits, loss of employment opportunities, and other past and future consequential damages, all in an amount to be demonstrated by the proof at trial. In addition, Plaintiff has suffered and will in the future continue to suffer serious emotional injury directly caused by Defendant's discriminatory and retaliatory conduct described above, all to his damage in an amount to be demonstrated by the proof at trial.

## COUNT V
### (Punitive Damages)

42. Plaintiff re-alleges and incorporates the allegations set forth above.

43. At all relevant times Defendant was aware that its conduct violated Plaintiff's rights under the ADA. Defendant's conduct occurred in intentional, malicious and wanton disregard of Plaintiff's rights as secured by the ADA entitling Plaintiff to an award of punitive damages in an amount to be determined by the evidence at trial.

**WHEREFORE,** Plaintiff prays for judgment as follows:

A. An award of damages fully compensating him for his injuries described herein, consistent with the evidence at trial;

B. An award of punitive damages;

C. An award of appropriate injunctive relief;

D. An award of costs and attorney fees;

E. An award of all other relief to which he may appear entitled.

Respectfully submitted,

/s/ Michael J. O'Hara
MICHAEL J. O'HARA (KY 52530) (OH 0014966)
O'HARA, TAYLOR, SLOAN & CASSIDY
25 Town Center Boulevard, Suite 201
Covington, KY 41017
Tel: (859) 331-2000
Fax: (859) 578-3365
Email: mohara@oharataylor.com

BENJAMIN T.D. PUGH (OH 0086781)(KY 94032)
PUGH & ROACH, Attorneys at Law, PLLC
28 West Fifth Street
Covington, Kentucky 41011
(859) 291-5555
FAX (859) 287-2600 email: tom@prlaw.legal

ATTORNEYS FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact.

        /s/ Michael J. O'Hara
        MICHAEL O'HARA
        O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT